PROB 12C
(06/17)

June 27, 2019
pacts id: 239238

# UNITED STATES DISTRICT COURT
# FOR THE
# SOUTHERN DISTRICT OF CALIFORNIA

## Petition for Warrant or Summons for Offender Under Supervision

**Name of Offender:** Mark Eric De La Garza (English)  **Dkt No.:** 11CR01760-001-AJB

**Reg. No.:** 25288-298

**Name of Sentencing Judicial Officer:** The Honorable Anthony J. Battaglia, U.S. District Judge

**Original Offense:** 21 U.S.C. §§ 952 and 960, Importation of Methamphetamine, a Class A felony.

**Date of Sentence:** March 23, 2012

**Sentence:** 120 months of custody; 3 years of supervised release *(Special Conditions: Refer to Judgment and Commitment Order.)*

**Type of Supervision:** Supervised Release    **Date Supervision Commenced:** December 14, 2018

**Asst. U.S. Atty.:** Carlos Arguello    **Defense Counsel:** Donald Nunn
(Appointed)
858-748-8612

**Prior Violation History:** Yes. See prior court correspondence.

## PETITIONING THE COURT

**TO ISSUE A NO-BAIL BENCH WARRANT**

PROB12(C)
Name of Offender: Mark Eric De La Garza  June 27, 2019
Docket No.: 11CR01760-001-AJB  Page 2

The probation officer believes that the offender has violated the following condition(s) of supervision:

| **CONDITION(S)** | **ALLEGATION(S) OF NONCOMPLIANCE** |
| --- | --- |
| **(Mandatory Condition)** The defendant shall not illegally possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. Submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter. Testing requirements will not exceed submission of more than four (4) drug tests per month during the term of supervision, unless otherwise ordered by the court. | 1. On or about March 26, 2019, Mr. De La Garza used a controlled substance, as evidenced by the urine sample he submitted at the U.S. Probation Office on March 26, 2019, which confirmed positive for methamphetamine. |
| | 2. On or about April 13 and 15; May 4 and 29; and June 1, 2019, Mr. De La Garza used a controlled substance, methamphetamine, as evidenced by his admissions to the probation officer on April 19, and June 7, 2019. |
| **(Standard Condition)** Answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer. | 3. On June 11, 2019, Mr. De La Garza failed to comply with drug testing requirements as instructed by the probation officer, in that he failed to submit a urine sample at the United States Probation Office, as required. |

***Grounds for Revocation:*** As to Allegation 1, I have received and reviewed written laboratory notification from Alere Toxicology Services, which verifies the urine specimen provided by Mr. De La Garza on March 26, 2019, confirmed positive for methamphetamine.

As to Allegation 2, Mr. De La Garza reported to the U.S. Probation Office on April 15 and 16; May 7 and 31; and June 3, 2019, and submitted urine specimens which screened positive for amphetamines. When informed of the positive screens on April 19, 2019, and June 7, 2019, Mr. De La Garza admitted to the probation officer to using methamphetamine on April 13 and 15; May 4 and 29; and June 1, 2019.

As to Allegation 3, I have received and reviewed the Chain of Custody for Drug Analysis form which confirms that on June 11, 2019, Mr. De La Garza failed to submit a urine sample, as required. On January 11, 2019, the probation officer reviewed written instructions for drug testing with Mr. De La Garza, and he acknowledged receipt of the instructions with his signature. Specifically, Mr. De La Garza was instructed to call the drug testing line after 8:15PM the day before each drug testing day to hear if he was to report for testing Monday through Friday and report for testing when required in the automated testing line recording

## VIOLATION SENTENCING SUMMARY

### SUPERVISION ADJUSTMENT

Mr. De La Garza began his term of supervised release on December 14, 2018. While in custody, he completed the 500 hour drug treatment program, and completed aftercare while at the Residential Reentry Center (RRC). On December 17, 2018, Mr. De Le Garza moved into a sober living home and was placed in the formal drug testing program to support and ensure his sobriety. He was working full time for a plumbing company and appeared to be on track.

Starting in March 2019, Mr. De La Garza began to struggle with his sobriety. He failed to report for a drug test and submitted a sample that screened positive for amphetamines. When confronted, he denied use. The test later confirmed positive and Mr. De La Garza then admitted he was with negative peers on his birthday and ingested the methamphetamine during that time. He was admonished concerning the drug use, and he stated he had too much to lose and would not use again. He was moved to the highest level in the drug testing program to monitor for any further drug use.

In April 2019, Mr. De La Garza tested positive for amphetamines two additional times. He reported to the probation office on April 19, 2019, and treatment options were discussed. He did not think he needed treatment but agreed to attend an outpatient program and to attend two support meetings on the weekend, as weekends were when he reported he would use drugs. He stated he used methamphetamine when he was bored and with friends. On April 26, 2019, he called and reported he had an intake with Central East Recovery Center on May 7, 2019.

On May 7, 2019, Mr. De La Garza called and stated he got mixed up on the time and missed his intake with the outpatient program but stated he would report to the program the next day to see if there were any openings. That same day, a sample he submitted for testing screened positive for amphetamines. On May 9, 2019, a phone call was made to Mr. De La Garza and he denied drug use. After further discussion, he finally admitted he had used on Saturday, May 5, 2019. He also reported he had not attended support meetings as instructed by the probation officer. He was verbally admonished for not making efforts to get into treatment or gain his sobriety. He agreed to enter an intensive outpatient treatment program and move into a sober living that would hold him accountable with testing, a curfew, and support meetings. The undersigned assisted with calling multiple outpatient programs, which resulted in intake dates at two different programs to ensure he was able to enter a program as soon as possible.

The undersigned contacted Foundations in Recovery (FIR), a sober living (SL) residence, and coordinated an intake. A text was sent to Mr. De La Garza asking when he could move and he responded, "ASAP." An intake with FIR was set for May 13, 2019. He attended the intake but stated he did not want to move in yet, reporting he had not expected the undersigned to get him a bed that quickly. He was instructed to report to the probation office the next day to discuss this further.

On May 14, 2019, Mr. De La Garza reported to the probation office and was admonished for not agreeing to enter the SL home the day prior, as he had stated he wanted to enter as soon as possible. After an extensive discussion, he agreed to take a step forward and move into FIR that day. He did move in (and was funding his own rent) and later entered McAlister Institute, an outpatient drug treatment program, on May 22, 2019.

On May 31, 2019 and June 3, 2019, Mr. De La Garza submitted samples that screen positive for amphetamines. As his drug use had continued even with an intensive outpatient program and the accountability and support of a sober living, he was called into the probation office on June 7, 2019. He was confronted with the additional drug use and reminded that the number of positives do reach mandatory revocation, but that there was still one more treatment option available, which was residential treatment. Though he disagreed that he needed it, he stated he was willing to participate in a residential drug treatment program and he signed the Waiver of Hearing form, agreeing to the modification. He was provided a list of program and a couple were discussed with him as possible options, specifically for his situation. He stated he wanted to confer with his counselor at McAlister and would update the undersigned. On June 10, 2019, he was called and stated he was meeting with his counselor later that day. On June 11, 2019, he was called again to follow up, but due to no answer, a voicemail was left instructing him to call back. On June 12, 2019, Mr. De La Garza called the undersigned and stated his counselor was getting him into a program, but he did not know the name. He was asked for further details but could not provide them. He was reminded that it is his responsibility to coordinate an intake with a program and was instructed to do that by June 13, 2019 and call the undersigned back with information. He failed to call the next day. It should also be noted that he failed to appear for testing on June 11, 2019.

## OFFENDER PERSONAL HISTORY/CHARACTERISTICS

Mr. De La Garza is a 59-year-old male. He reports that he is single and not dating. He has six children and has recently become closer to one his sons and daughter. He currently works full time with Express Plumbing and Heating, where he has been for since December 2018. He reports that his job and his relationship with his children are the most important things in his life.

Mr. De La Garza has a long history of alcohol and drug use, including marijuana, cocaine, and methamphetamine. He most recently has relapsed on methamphetamine. He did attend and complete the 500 hour drug treatment program while in BOP custody. Mr. De La Garza has been attending outpatient drug treatment at McAlister Institute.

His criminal history dates back to the 1980s and includes arrests for the following: battery, corporal injury, battery with serious bodily injury, assault to commit rap with a deadly weapon, burglary, theft, forgery, possession of a controlled substance, and possession of drug paraphernalia.

PROB12(C)
Name of Offender: Mark Eric De La Garza  June 27, 2019
Docket No.: 11CR01760-001-AJB  Page 5

## SENTENCING OPTIONS

### CUSTODY

**Statutory Provisions:** Upon the finding of a violation, the court may modify the conditions of supervision; extend the term (if less than the maximum authorized term was previously imposed); or revoke the term of supervised release. 18 U.S.C. § 3583(e)(2) and (3).

**Mandatory Revocation:** If it is determined that the offender has violated the conditions of supervised release by refusing to comply with drug testing, the court is required to revoke supervised release and impose a sentence that includes a term of imprisonment. 18 U.S.C. § 3583(g)(3), and USSG §7B1.4, p.s., comment. (n.5).

If it is determined that the offender has violated the conditions of supervised release by testing positive for illegal substances more than 3 times during the course of 1 year, the court shall revoke supervised release and impose a sentence that includes a term of imprisonment. 18 U.S.C. § 3583(g)(4).

If the court revokes supervised release, the maximum term of imprisonment upon revocation is 5 years. 18 U.S.C. § 3583(e)(3).

**USSG Provisions:** The allegations (use of a controlled substance, failure to comply with drug testing, and failure to follow the instructions of the PO) constitute Grade C violations. USSG §7B1.1(a)(3)(b), p.s.

A Grade C violation with a Criminal History Category IV (determined at the time of sentencing) establishes an **imprisonment range of 6 to 12 months.** USSG § 7B1.4, p.s.

### REIMPOSITION OF SUPERVISED RELEASE

If supervised release is revoked and the offender is required to serve a term of imprisonment, the court can reimpose supervised release upon release from custody. The length of such a term shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment imposed upon revocation. 18 U.S.C.§ 3583(h).

In this case, the court has the authority to reimpose a term of supervised release of any years up to life, less any term of imprisonment imposed upon revocation. 18 U.S.C. § 3583(k), and 21 U.S.C. §§ 841, 960.

### JUSTIFICATION FOR BENCH WARRANT

Mr. De La Garza is actively abusing methamphetamine and with his criminal history that includes violent offenses, there is concern for community safety. Therefore, a warrant is respectfully requested.

### RECOMMENDATION/JUSTIFICATION

Mr. De La Garza has fallen back into his addiction to methamphetamine. Though he has admitted to drug use, he has not made the effort necessary to address his addiction. He has noted to the probation officer that he has the tools necessary to maintain his sobriety from completing the 500 hour drug treatment program in custody, but his use of methamphetamine has only escalated, showing his past treatment is not sufficient to address his recent relapse. He has been given multiple opportunities by being linked with treatment programs at different levels but

PROB12(C)

Name of Offender: Mark Eric De La Garza  June 27, 2019
Docket No.: 11CR01760-001-AJB  Page 6

has not followed through. He continues to abuse methamphetamine and is not fully complying with testing, which is a breach of the Court's trust. Mr. De La Garza has to make the personal decision to address his addiction but cannot continue to use illicit substance in the community while on supervised release. A custodial intervention is needed at this time to stop his cycle of use. Therefore, if found in violation, it is recommended that Mr. De La Garza's supervised release be revoked and he be sentenced to 4 months in custody, followed by 30 months of supervised release. Though 4 months is below the guideline range, it is believed to be sufficient to address the breach of trust and get Mr. De La Garza to a place of clarify where he can quickly transition into a drug treatment program. Supervised release is recommended with all previously imposed special conditions reimposed, as they are necessary to effectively supervise and support Mr. De La Garza in his rehabilitation in the community, with the addition of a residential drug treatment condition. This will assist him in gaining his sobriety at the highest level of treatment available, as all other treatment options have been exhausted. An RRC placement of up to 120 days is also recommended to provide Mr. De La Garza housing while he transitions into a drug treatment program, if so ordered by Your Honor.

**I declare under penalty of perjury that the foregoing is true and correct.**

**Executed on: June 27, 2019**

Respectfully submitted:
DAVID J. SULTZBAUGH
CHIEF PROBATION OFFICER

by  _____
Lindsay C. Woolley
U.S. Probation Officer
(619) 557-5411

Reviewed and approved:

_____
Elizabeth Simons
Supervising U.S. Probation Officer

PROB12CW                                                                                                          June 27, 2019

# VIOLATION SENTENCING SUMMARY

1. **Defendant:** De La Garza, Mark Eric

2. **Docket No. (Year-Sequence-Defendant No.):** 11CR01760-001-AJB

3. **List Each Violation and Determine the Applicable Grade** (*See* USSG § 7B1.1):

| Violation(s) | Grade |
|---|---|
| Use of a controlled substance | C |
| Failure to comply with drug testing | C |
| Failure to follow the instructions of the PO | C |

4. **Most Serious Grade of Violation** (*See* USSG § 7B1.1(b))         [ C ]
5. **Criminal History Category** (*See* USSG § 7B1.4(a))                [ IV ]
6. **Range of Imprisonment** (*See* USSG § 7B1.4(a))            [ 6 to 12 months ]

7. **Unsatisfied Conditions of Original Sentence:** List any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation (*See* USSG § 7B1.3(d)):

Restitution ($) _____     Community Confinement _____
Fine($) _____            Home Detention _____
Other _____              Intermittent Confinement _____

PROB12(C)

| | |
|---|---|
| Name of Offender: Mark Eric De La Garza | June 27, 2019 |
| Docket No.: 11CR01760-001-AJB | Page 8 |

**THE COURT ORDERS:**

__✓__ AGREE.  A NO-BAIL BENCH WARRANT BE ISSUED BASED UPON A FINDING OF PROBABLE CAUSE TO BRING THE OFFENDER BEFORE THE COURT TO SHOW CAUSE WHY SUPERVISED RELEASE SHOULD NOT BE REVOKED FOR THE ALLEGED VIOLATIONS.

_____ DISAGREE.  THE ISSUANCE OF A SUMMONS ORDERING THE OFFENDER TO APPEAR BEFORE THE COURT ON _____, AT _____, TO SHOW CAUSE WHY SUPERVISED RELEASE SHOULD NOT BE REVOKED.

_____ Other _____

_____         6/28/19
The Honorable Anthony J. Battaglia                  Date
U.S. District Judge